## PRETECA et al. v. MAXWELL LAND GRANT CO.

*(Circuit Court of Appeals, Eighth Circuit. May 16, 1892.)*

No. 58.

**1. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS—BILL.**
Complainant's bill averred that it was the owner of certain lands to which its title had been established by divers actions at law against persons in like cases with defendants; that defendants were unlawfully in possession of part of said land, mining and removing valuable minerals therefrom, and cutting timber growing thereon; that the damages for these unlawful acts was incapable of computation and adjudication at law; that while complainant's title was single and exclusive, as against all the defendants, it could not be quieted without numerous actions at law, involving the same question, because defendants' claims, as between themselves, were separate and different; and it prayed that complainant's title might be quieted, and defendants restrained by injunction from committing further trespasses. *Held,* that the averments of the bill make the case one of equitable cognizance.

**2. APPEAL—OBJECTIONS NOT RAISED BELOW—JURISDICTION OF EQUITY.**
Though there may be a doubt whether the case made by a bill is one of equitable jurisdiction, because of the remedy that complainant may have at law, the doubt will, on appeal, be resolved in favor of the jurisdiction, where the question was not raised below.

Appeal from the Circuit Court of the United States for the District of Colorado, sitting at Denver.

Bill in equity by the Maxwell Land Grant Company against Vicente Preteca and others to quiet title and restrain trespasses. There was a decree for complainant, pursuant to a stipulation filed, and defendants appeal. Decree affirmed.

*Alexander Graves,* for appellants.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge. The complainant filed its bill in equity in the court below, alleging that it was the legal owner of the lands described in the bill known as the "Beaubien and Miranda Grant;" that complainant's "title to the said lands has been established at law by divers actions of ejectment, duly and regularly brought and prosecuted to judgment in the courts of the territory of New Mexico, by and on behalf of your orator and those through whom it derives its title, against persons in like situation with said defendants, which said actions at law involved and depended on the same questions of title now in controversy between your orator and each of said defendants; that your orator, and, as it is informed and believes, its several predecessors in interest successively, have occupied and held possession of the said grant and tract of land, claiming the whole thereof under the said grant, patent, and conveyances (with the exception aforesaid) continuously from the date of delivery of juridical possession thereof by the Mexican government in A. D. 1843 to the present time, save in so far as they have from time to time been interfered with by the unlawful acts of said defendants and others in like situation as to portions thereof;" that the defendants "have lately wrongfully, unlawfully, and without the permission of your orator entered upon and taken possession of certain portions of the said lands

of your orator not heretofore conveyed to any other party under whom the said defendants, or any of them, claim any right thereto, and still hold and maintain possession thereof, and have excluded, and still do exclude, your orator, and those claiming under it, from occupying and enjoying the same, and have proceeded to mine, remove, and appropriate to their own use the precious and valuable minerals, ores, and coal in and upon said lands; to cut, remove, and use the trees and timber, grass and hay, growing thereon; * * * that the said acts of said defendants are not committed upon any portion of said grant and tract of land claimed or held by them, or any of them, under any grant from the government of Mexico, or under any conveyance or license from your orator, or any of its predecessors in interest, but solely on the pretended ground that said grant is public domain of the United States, and that they have the right to enter the same as such;" that "the damages resulting from the said unlawful acts of the said defendants are of such a nature as to be incapable of computation and adjudication at law, and as to require, if sued for at law, a multiplicity of suits, at various and successive times, against various parties, as to the same subject-matter, and founded upon the same claim, right, and title, and at great cost, expense, and vexation to your orator, and that your orator will therefore sustain irreparable loss and damage by means of the said repeated, continuous, and various acts and trespasses, unless the same are restrained by the order of this honorable court; * * * that the claims of the said defendants, although separate and different as between themselves, are all subordinate to your orator's single title, and to its rights, and are assertions of claims which cast a cloud upon your orator's possession and title, and prevent your orator from the peaceable enjoyment of the fruits of its said ownership; that the right, title, and claim of your orator is single, general, and exclusive against all of said defendants, and that such right and title cannot be quieted at law by one or two actions, but numerous suits would be required, involving the same question, wherein each suit would determine such right only between your orator and the defendant in that suit, thereby making great and unnecessary costs, expense, and vexation, both to your orator and said defendants." The bill prayed for a decree quieting complainant's title, and for a perpetual injunction restraining the defendants from mining or from committing other acts of trespass upon the lands. The defendants entered their appearance to the suit, and filed an answer and cross bill. On the 21st day of June, 1890, the following stipulation was entered into between the parties to the suit:

"It is stipulated and agreed that the above-entitled cause may be continued until after the appeal in the case of *Interstate Land Co.* v. *Maxwell Land Grant Co.*, No. 2365 on the docket of this court, has been determined by the supreme court of the United States, and, in the event that the judgment of the circuit court in the aforesaid case is reversed by the supreme court of the United States, then this case shall stand for trial; and in the event that the judgment of the circuit court is affirmed, then the cross complaint in this case shall be dismissed, the denials of the defendants withdrawn, and judgment entered for the plaintiff in accordance with the prayer of the complaint."

The case of *Interstate Land Co.* v. *Maxwell Land Grant Co.*, mentioned in the stipulation, was determined by the supreme court of the United States in favor of the Maxwell Land Grant Company, (11 Sup. Ct. Rep. 656,) and thereupon a decree was rendered in this cause by the court below, in exact conformity to the stipulation of the parties. From this decree the defendants appealed to this court.

The only error relied upon in argument is that the complainant's remedy was at law, "and a court of chancery has no jurisdiction of the cause." From the averments of the bill it is obvious the complainant resorted to equity to avoid a multiplicity of suits and irreparable damage resulting from continued acts of waste and trespass to land. These are recognized heads of equity jurisdiction. A court of equity may take cognizance of a controversy to prevent a multiplicity of suits, although the exercise of such jurisdiction may call for the adjudication upon purely legal rights and confer purely legal relief; and so a court has jurisdiction to restrain waste and trespass to land where the facts are of such a nature that the law cannot afford adequate relief. 1 Pom. Eq. Jur. §§ 243, 245, 252, 271–274, and cases there cited. The bill avers that the complainant's title has been finally adjudicated in its favor by a court of competent jurisdiction in suits brought against persons in like situations with the defendants. The averments of the bill make the case one of equitable cognizance. Against irresponsible parties taking mineral out of the land and removing the same, and cutting and removing timber, actions of ejectment would have been wholly inadequate for the protection of the complainant's rights.

It may be true that the complainant had a remedy at law, but "it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." *Boyce* v. *Grundy*, 3 Pet. 215; *Oelrichs* v. *Spain*, 15 Wall. 211, 228. This objection was not made in the court below. In the states where the distinction between law and equity is still maintained, the prevailing rule is that such an objection will not be sustained by the appellate court, unless it was made and insisted on in the court below. *Moss* v. *Adams*, 32 Ark. 562; *May* v. *Goodwin*, 27 Ga. 352; *Stout* v. *Cook*, 41 Ill. 447; *Crocker* v. *Dillon*, 133 Mass. 91; *Russell* v. *Loring*, 3 Allen, 121, 125; *Blair* v. *Railroad Co.*, 89 Mo. 383, 1 S. W. Rep. 350; *Iron Co.* v. *Trotter*, 43 N. J. Eq. 185, 204, 7 Atl. Rep. 650, and 10 Atl. Rep. 607; *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 339, 369. And in the courts of the United States the objection, when made for the first time in the appellate court, is looked upon with extreme disfavor. In the late case of *Tyler* v. *Savage*, 143 U. S. 79, 12 Sup. Ct. Rep. 340, the court say:

"In recent cases in this court the subject of the raising for the first time in this court of the question of want of jurisdiction in equity has been considered. In *Reynes* v. *Dumont*, 130 U. S. 354, 395, 9 Sup. Ct. Rep. 486, it was said that the court, for its own protection, might prevent matters properly cognizable at law from being drawn into chancery at the pleasure of the parties interested, but that it by no means followed, where the subject-matter belonged to that class over which a court of equity had jurisdiction, and the

objection that the complainant had an adequate remedy at law was not made until the hearing in the appellate tribunal, that the latter could exercise no discretion in the disposition of such objection; and reference was made to 1 Daniell, Ch. Pr. (4th Amer. Ed.) 555; *Wylie* v. *Coxe*, 15 How. 415, 420; *Oelrichs* v. *Spain*, 15 Wall. 211; and *Lewis* v. *Cocks*, 23 Wall. 466. To the same effect are *Kilbourn* v. *Sunderland*, 130 U. S. 505, 514, 9 Sup. Ct. Rep. 594; *Brown* v. *Iron Co.*, 134 U. S. 530, 535, 536, 10 Sup. Ct. Rep. 604; and *Allen* v. *Car Co.*, 139 U. S. 658, 662, 11 Sup. Ct. Rep. 682."

Answering an objection of this kind made for the first time in the supreme court, Chief Justice FULLER, speaking for the court, said:

"Under the circumstances of this case, it comes altogether too late, even though, if taken *in limine*, it might have been worthy of attention." *Reynes* **v.** *Dumont*, 130 U. S. 354, 395, 9 Sup. Ct. Rep. 486.

We think the facts alleged in the bill make the case one of equitable cognizance, but, if we entertained doubts of this point, we would, because of the fact that the objection was not made in the court below, **resolve** them in favor of the jurisdiction. Decree affirmed.