UNION PAC. RY. CO. v. HARRIS.

(Circuit Court of Appeals, Eighth Circuit.   October 8, 1894.)

No. 439.

1. APPEAL—OBJECTIONS NOT RAISED BELOW.
   The objection that an action, or any material issue therein raised by the pleadings, is cognizable at law, instead of in equity, or vice versa, is waived by a failure to interpose it in apt time in the court of original jurisdiction.

2. RELEASE—EVIDENCE OF FRAUDULENT PROCUREMENT.
   A finding in an action for personal injuries that a release was procured by fraud will not be disturbed on error, where it appears that plaintiff was unconscious for many hours after the accident, and, because of the severity of the pain, was kept under narcotics for two

weeks or more, and three days after the accident, while all others save his nurses were denied access to him, defendant's agents procured his signature to the release, which there was evidence tending to show he could not read and did not read, and which was not read to him, and was signed in reliance upon the representations that the accident was caused by another company, which was alone responsible, and that the release was only a receipt for the estimated amount of plaintiff's medical expenses and loss of time.

3. APPEAL—ESTOPPEL TO ALLEGE DEFECT IN EVIDENCE.

Where plaintiff offers and is ready to produce competent evidence to prove a material fact in issue, and the court rejects it on defendant's objection, defendant will not afterwards be permitted to allege that plaintiff failed to prove the facts alleged in the offer of evidence.

4. SAME—REVIEW OF EVIDENCE.

A bill of exceptions stating only that certain of plaintiff's witnesses "gave evidence tending to show" is unavailing for the purpose of showing that the evidence was not sufficient to warrant a verdict for plaintiff.

In Error to the Circuit Court of the United States for the District of Colorado.

Willard Teller (Harper M. Orahood, E. B. Morgan, and John M. Thurston, on the brief), for plaintiff in error.

William B. Felker (William L. Dayton, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This action was brought in the circuit court of the United States for the district of Colorado by Robert E. Harris against the Union Pacific Railway Company, to recover for personal injuries received by him while he was a passenger on defendant's train. The plaintiff recovered judgment in the circuit court, and the defendant sued out this writ of error.

The complaint alleged, in substance, that the company ran one or more of its freight cars out on its side track, known as the "Silver Age Mill Siding," and negligently left the same in such a position that they obstructed the main track, or that they were left in an insecure and unsafe position on the side track, and negligently permitted to run upon the main track, so that, when the train upon which the plaintiff was a passenger came along, it ran into these freight cars, derailing and breaking to pieces the car in which the plaintiff was riding, and inflicting upon him serious and permanent injuries to his mind and body. In its original answer the defendant denies generally all negligence, but "admits that it had standing upon its side track, at about the place mentioned in said complaint, one or more freight cars, but denies that the said freight cars were left insecure or unsafe, or in such a position as to interfere with the passage of the train of cars upon which the plaintiff was riding." The proof is plenary that the accident was caused by the passenger train coming in collision with the freight cars on this siding, in the manner set out in the complaint. The defendant, in its answer, admits "that it had standing upon its side track" the freight cars in question, and rests its defense on the issue of negligence solely upon a denial of the charge that the freight cars

were left on the side track in an insecure or unsafe position, or in such a position as to interfere with the passenger train. The answer contains no allegation or suggestion that any other company had any control over this side track or these freight cars, or that any other company was in any manner responsible for the negligence which resulted in the collision. Upon this state of the pleadings and proofs, it was not error for the lower court to tell the jury there was no room for controversy over the question of the defendant's negligence. The remark of the learned judge who tried the case at circuit, that "the act of negligence of the servants of the mining company is to be ascribed to the defendant," must be read in connection with that portion of the charge which precedes and follows it; and, when so read, it means that, if the defendant committed the management and control of its cars on its side track to the servants of the mining company, their negligence was to be ascribed to the defendant. Further consideration of this issue is unnecessary, as we, understand the learned counsel for the plaintiff in error, upon the argument, to concede that defendant's negligence was sufficiently established.

The defendant filed a supplemental answer, in which it pleaded in bar of the action a release executed by the plaintiff four or five days after the accident, by the terms of which he acknowledged the receipt of $250 in full settlement of the injuries he received and the property he lost by the accident, "and in full of all claims and demands of whatsoever character." To this defense the plaintiff replied—First, that at the time he executed the release he was not mentally capable of making a contract; and, second, that the release was obtained from him by fraud; that the defendant's agents represented to him that the defendant was not liable to the plaintiff for the injuries he had sustained, because, as they asserted, the accident was caused by the negligence of another company, that had charge of the side track and freight cars, and which was alone responsible for the injury sustained by the plaintiff; that the defendant's agents further represented to the plaintiff that the paper he was asked to sign was only a receipt for the amount of what it was estimated the medical services rendered him would cost, and for the expenses of sickness and loss of time for two weeks, and for nothing else; and that he signed the paper relying on the truth of these representations, being unable to read it himself, and no one reading it to him.

The chief contention of the plaintiff in error is that the issues arising on the replication to the defendant's supplemental answer should not have been submitted to the jury. It is said the plaintiff cannot in this action avoid the release for fraud, or show that he was mentally incapable of entering into a valid contract at the time he executed it; that the release can only be avoided upon these grounds by a suit in equity. This question was not raised in the lower court. The defendant did not demur to the plaintiff's replication upon the ground that a court of law could not try the issues it presented. These issues were tried to the jury without objection, and it is now too late to object for the first time in the appellate

court to that mode of trial. The objection that an action should have been brought at law instead of in equity, or vice versa, is waived by a failure to interpose it at the proper time in the court of original jurisdiction. Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, Insley v. U. S., 150 U. S. 512, 14 Sup. Ct. 158; Preteca v. Land-Grant Co., 50 Fed. 674, 1 C. C. A. 607, 4 U. S. App. 326; Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340; Reynes v. Dumont, 130 U. S. 354, 395, 9 Sup. Ct. 486. If a party, when sued at law, conceives that the action, or any material issue in it, is of equitable cognizance, he must interpose the objection at the threshold of the case, and will not be heard to make it for the first time in the appellate court. The general principle is now well established that an appellate court will not entertain an objection to the form of the action, when the objection was not interposed in apt time in the trial court. It will be presumed that the parties assented to the theory that the remedy adopted was the proper one, and they will be held to that theory on appeal. Moreover, it is a general rule that questions not presented to the trial court will be deemed waived. Elliott, App. Proc. §§ 658, 679, 690, and citations; Brown v. Lawler, 21 Minn. 327; Brown v. Nagel, Id. 415; Weaver v. Kintzley, 58 Iowa, 191, 12 N. W. 262; Town of Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541; Buffalo Stone & Cement Co. v. Delaware, L. & W. R. Co. (N. Y. App.) 29 N. E. 121; Sexton v. Pike, 13 Ark. 193; Creely v. Brick Co., 103 Mass. 514. In what is here said, we are not to be understood as intimating that, if the defendant had interposed a timely objection to the jurisdiction of the lower court to try the issues presented by the replication, the objection would have been of any avail. We express no opinion upon that question.

A further contention of the plaintiff in error is that there was not sufficient evidence to warrant the court in submitting to the jury the issue as to whether the release was procured from the plaintiff by fraud. The injuries to the plaintiff were of the most serious character, and are permanent. He was unconscious for many hours after the accident, and when he recovered consciousness the pain from his injuries was so severe that he was compelled to take narcotics, which had their customary effect. While they deadened the sensibilities for the time being, they also deadened or dulled his senses. This treatment continued for two weeks or more. Three or four days after the accident, while this treatment was going on, and while his arms were suspended over a rope stretched across his bed in order to relieve the pressure upon his injured spine, and when he was tortured and racked with physical pain (when not under the influence of opiates), the defendant's agents found their way into his sickroom, from which his friends and all others, save his nurses, had been excluded, by order of his physician, on account of the serious character of his injuries, and procured his signature to the release. There is evidence tending to prove the averments of the replication, and to show that he did not and could not read the release, and that it was not read to him, and that he signed it relying upon the truth of the representations as to its contents made by the defendant's agents, which are set

out in the replication, and which need not be repeated. The issue as to whether the release was procured by fraud was therefore properly submitted to the jury, and, upon the evidence in the record, we cannot disturb their finding upon that issue.

It is next contended that there was not sufficient evidence to justify the court in submitting to the jury the issue as to the plaintiff's mental capacity to make a binding contract at the time he signed the release. The plaintiff in error is clearly estopped by the record from making this contention. After the defendant had introduced the release, and rested, the record shows that the following proceedings took place:

"The plaintiff was then recalled in rebuttal. Plaintiff's counsel then made the following offer: 'The plaintiff offers to prove by witnesses, Dr. Eskridge and Dr. Hughes, Dr. Kimball and Dr. Pershing, that for the space of ten to fifteen days the plaintiff had not recovered from his injuries, and that his mind was weakened, and that he was unable, from that source alone, to do any business; that in connection with the shock, with the administration of opiates in sufficient amount to cause unconsciousness, that, at the time when defendant claims this agreement was signed, his mind was not in a condition to fully understand or comprehend the terms and conditions of the agreement that was presented to him; and that, had it been read to him, or he had read it himself, he would not have been able to appreciate the force and effect of it.' (Objected to. Objection sustained by the court, and Mr. Felker excepted.) Mr. Felker: I offer to prove by Dr. Kimball that two weeks after the injury he called upon the plaintiff, to examine him in regard to the extent of his injuries, for the United States Accident Insurance Company: that he examined at that time the plaintiff, and found him to be in a mental condition unfit to do any business, or to comprehend and appreciate the force and effect of any business transaction that he might enter into. Mr. Teller: I want to enter my objections—First, on the ground that it would not be admissible anyhow, under any circumstances; and, second, it is specifically inadmissible on account of the state of the pleadings. The Court: I will sustain it. I do not go upon that ground. I think these physicians have testified as fully as they can as to his condition. I do not care to hear anything more from them."

The witnesses were in court, and ready to be called to the witness stand. The offered evidence was competent and material to the issue. It tended strongly to prove the plaintiff's case on the issue we are considering, and it was erroneously rejected by the court on the defendant's objection. The rule is well settled that when a plaintiff offers and is ready to produce competent evidence to prove a material fact in issue, and the court rejects it on the objection of the defendant, the defendant will not afterwards be permitted to allege that the plaintiff failed to prove the facts alleged in the offer of evidence. Big. Estop. (5th Ed.) 720; Thompson v. McKay, 41 Cal. 221; Jobbins v. Gray, 34 Ill. App. 208, 218, 219; Insurance Co. v. O'Connell, Id. 357, 362; Elliott, App. Proc. § 630. The defendant will not be allowed to thus take advantage of his own wrong, or the errors of the court induced on his own motion, and then compel the plaintiff to suffer the consequences. Such a proceeding would be the merest trifling with the court. Jobbins v. Gray, supra. If the rule were otherwise it would encourage and reward unfounded and groundless objections to the plaintiff's evidence, and tend to promote sharp practice and chicanery.

Upon the question of the sufficiency of the evidence to support

the verdict on the several issues in the case, we may further observe that the bill of exceptions does not show that it contains all the evidence. There is no statement in the bill to that effect. On the contrary, it affirmatively appears that it does not contain all the evidence. The plaintiff, in his testimony in chief, examined several witnesses, touching whose testimony the bill of exceptions states only that they "gave evidence tending to show," or "gave evidence tending to show substantially  *  *  *." The opinion of counsel, who drafted, and of the judge, who signed, the bill of exceptions, as to what the testimony of the witness "tended to show," or "tended to show substantially," cannot be accepted by the appellate court as the equivalent of the testimony of the witness. Gulf, C. & S. F. Ry. Co. v. Washington, 4 U. S. App. 121, 131, 1 C. C. A. 286, 49 Fed. 349; Railway Co. v. Shelton, 57 Ark. 459, 21 S. W. 876. Such a mode of stating the evidence is proper enough when its only purpose is to show there was sufficient evidence upon which to predicate the instructions given or refused, but it is unavailing for the purpose of showing that the evidence was not sufficient to warrant the verdict of the jury.

The remaining assignments of error relate to the rulings of the court in admitting evidence. A separate statement and consideration of these exceptions is not necessary, as none of them is of any general importance. They have all been considered carefully, and we are satisfied none of them has any merit. The judgment of the circuit court is affirmed.